NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, PLAINTIFF v.
JOHN M. BOURLON, DEFENDANT

No. COA04-245

(Filed 16 August 2005)

### 1. Appeal and Error— appealability—motion to compel discovery—interlocutory order

Although an order denying a motion to compel discovery is generally interlocutory in nature, this appeal is properly before the Court of Appeals because it denied defendant's motion to dismiss the instant appeal as an appeal from an interlocutory order in an order dated 25 March 2004.

### 2. Appeal and Error— preservation of issues—failure to argue

Although both parties assigned error to the trial court's order, defendant's cross-assignments of error are deemed abandoned under N.C. R. App. P. 28(b)(6) because defendant failed to offer any support for them in his brief.

### 3. Attorneys— attorney-client relationship—joint or dual representation—counsel employed by insurance company to defend insured against claim

The trial court erred by concluding that no attorney-client relationship existed between plaintiff insurance company and the attorney assigned by plaintiff to defend defendant insured against claims for personal injuries sustained after one of defendant's dogs bit another man in the face, because whenever defense counsel is employed by an insurance company to defend an insured against a claim, he represents both the insurer and the insured in a joint or dual representation.

### 4. Discovery— common interest or joint client doctrine—insurance litigation—communications between attorney and insured—privilege

The trial court erred by concluding that the attorney-client relationship between defendant insured and an attorney, assigned by plaintiff insurance company to defend defendant against claims for personal injuries sustained after one of defendant's dogs bit another man in the face, prevented the attorney from disclosing to plaintiff any communications between the attorney and defendant, because the common interest or joint client doc-

trine applies to the context of insurance litigation in North Carolina and provides that communications between the insurer and the retained attorney are not privileged to the extent that they relate to the defense for which the insurer has retained the attorney. However, the attorney-client privilege still attaches to those communications unrelated to the defense of the underlying action as well as those communications regarding issues adverse between the insurer and the insured such as communications that relate to an issue of coverage. In the·instant case in light of defendant's challenges to the attorney's representation, defendant waived the privilege with respect to those communications unrelated to the underlying action and which involved questions of coverage.

**5. Discovery— insurance litigation—entire file—attorney-client privilege**

The trial court did not err by concluding that an attorney, assigned by plaintiff insurance company to defend defendant against claims for personal injuries sustained after one of defendant's dogs bit another man in the face, breached the attorney-client relationship by providing the entire file from the underlying action to plaintiff, because some communications contained in the file may have been privileged including those communications unrelated to the underlying action or defendant's counterclaims, those communications regarding coverage issues made prior to defendant's counterclaims, and those communications unrelated to the conduct forming the basis of defendant's counterclaims. The file should have been submitted to the trial court for an in camera review aimed at determining which documents in the file were privileged.

**6. Discovery— refusal of sanctions—refusal to answer certain questions based on privilege—premature termination of deposition**

The trial court did not abuse its discretion by refusing to grant plaintiff insurance company's motion for sanctions based on defendant insured's alleged unjustifiable refusal to answer certain questions and premature termination of his deposition where the trial court noted that the privilege issue involved in the motion was a question of·first impression, because plaintiff failed to demonstrate that the trial court's decision was arbitrary and unreasoned. N.C.G.S. § 1A-1, Rule 37.

**7. Appeal and Error— sealing of documents pending further orders—privilege**

Although plaintiff contends the trial court erred by ordering that the attorney assigned by plaintiff insurance company to defend defendant insured have his files relating to defendant's case and all copies of documents contained therein sealed pending further orders, the merits of this argument are not reached in light of the Court of Appeals' prior conclusions regarding those portions of the attorney's file which were discoverable and whether defendant waived his privilege with respect to the remaining portions.

Judge TYSON concurring in part and dissenting in part.

Appeal by plaintiff from order entered 5 September 2003 by Judge Evelyn W. Hill in Wake County Superior Court. Heard in the Court of Appeals 4 November 2004.

*Bailey & Dixon, L.L.P., by Gary S. Parsons and David S. Wisz, for plaintiff-appellant.*

*Stark Law Group, P.L.L.C., by W. Russell Congleton, Thomas H. Stark, and Fiona V. Ginter, for defendant-appellee.*

TIMMONS-GOODSON, Judge.

Nationwide Mutual Fire Insurance Company ("plaintiff") appeals the trial court order denying its motion for sanctions and/or discovery and requiring the parties to maintain certain documents under seal. For the reasons discussed herein, we affirm in part and reverse in part.

The facts and procedural history pertinent to the instant appeal are as follows: On 24 September 1996, Dimitri Axarlis ("Axarlis") filed a complaint against John M. Bourlon ("defendant") and his wife, seeking damages for personal injuries Axarlis sustained after one of defendant's dogs bit him in the face ("the underlying action"). In addition to his claim for personal injuries, Axarlis alleged that defendant maliciously prosecuted him and abused the criminal process by securing a second-degree trespass charge against him. Axarlis admitted that he was on defendant's property when he was attacked, but he asserted that he entered defendant's property in an effort to rescue his girlfriend's dog, which was being chased and attacked by defendant's dogs.

At the time of these incidents, defendant had a homeowners' insurance policy ("the policy") with plaintiff. The policy had a personal liability limit of $300,000.00, and it provided as follows:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
>
> 1. pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

Following the filing of Axarlis' complaint, defendant notified plaintiff of the claims against him. On 11 October 1996, plaintiff informed defendant that it had assigned Lee A. Patterson, II ("Patterson"), to represent him. Plaintiff further informed defendant that the malicious prosecution and abuse of process claims in Axarlis' complaint were not covered by the policy, and that therefore it would not provide indemnity to defendant with regard to those claims. However, plaintiff informed defendant that it would provide legal representation against all of Axarlis' claims, including the malicious prosecution and abuse of process claims.

Efforts of the parties to reach a pretrial settlement failed, and the case proceeded to trial. On 28 October 1998, the jury returned a verdict against defendant and his wife, concluding that Axarlis was injured by a vicious animal wrongfully kept by defendant, that Axarlis was injured by the negligence and willful or wanton conduct of defendant, and that defendant maliciously prosecuted Axarlis for trespass. The jury awarded Axarlis $321,000.00 in compensatory and punitive damages, which included an award of $1,000.00 in compensatory damages and $150,000.00 in punitive damages, each arising out of the malicious prosecution verdict. The jury's verdict made no mention of or award for Axarlis' claim for abuse of process.

Following entry of the verdict, Patterson filed post-trial motions on defendant's behalf. Prior to a hearing on the motions, Axarlis communicated to Patterson an offer to settle all claims in the underlying action for $236,000.00. Plaintiff offered to contribute $200,000.00

NATIONWIDE MUT. FIRE INS. CO. v. BOURLON

[172 N.C. App. 595 (2005)]

toward the settlement, if defendant would pay the remaining $36,000.00. Defendant thereafter instructed Patterson to inform plaintiff that he would contribute $20,000.00 to the settlement. Plaintiff refused defendant's offer of contribution, and, allegedly without defendant's prior knowledge, plaintiff subsequently settled the covered claims separately. Axarlis thereafter demanded from defendant full payment of the jury's award for malicious prosecution. Defendant and Axarlis subsequently reached a separate settlement agreement, whereby defendant personally paid Axarlis for the malicious prosecution verdict.

In January 2001, defendant contacted Patterson via new counsel and requested a copy of his file. Patterson advised plaintiff of the request, and plaintiff's counsel thereafter contacted the North Carolina State Bar, seeking advice regarding whether defendant was entitled to a copy of the file. The State Bar advised plaintiff that defendant was entitled to a copy of the file, and plaintiff subsequently made arrangements to provide defendant with the file through Patterson's office.

On 8 February 2001, plaintiff filed a declaratory judgment complaint against defendant, seeking *inter alia* a determination that it was not obligated to indemnify defendant for any sums paid in settlement of the malicious prosecution verdict. On 3 December 2001, defendant filed an answer denying plaintiff's allegations and asserting counterclaims for breach of contract, negligence, bad faith refusal to settle, negligent misrepresentation, fraud, breach of fiduciary duty, and unfair or deceptive trade practices. The trial court subsequently granted partial summary judgment in favor of plaintiff, dismissing defendant's breach of contract counterclaim and concluding that plaintiff was not obligated to indemnify defendant for either the malicious prosecution verdict against defendant or defendant's settlement with Axarlis.

Following the order granting partial summary judgment, plaintiff sought to depose defendant regarding his remaining counterclaims. On 11 April 2003, defendant appeared for his deposition with counsel. Although he had not sought a protective order or filed a motion to limit the scope of the deposition, prior to commencement of the deposition, defendant's counsel stated as follows:

I'm [] going to object to taking of this deposition by your firm because I believe that there is a conflict. We have addressed

this with [plaintiff's counsel], and [plaintiff's counsel] has assured us there is none. However, in our review of the correspondence, it appears to us that your firm has been privy to confidential communications between the trial counsel and [defendant], and therefore is in a conflict position when it tries to represent Nationwide.

The deposition proceeded until defendant was questioned regarding his communications with Patterson. In response, defendant asserted the attorney-client privilege and refused to answer questions regarding his conversations with Patterson. Defendant's counsel thereafter terminated the deposition.

On 28 April 2003, plaintiff filed a motion requesting that the trial court sanction defendant and/or require defendant to "fully and adequately respond to all questions concerning his communications with [] Patterson." Following presentation of evidence and arguments by both parties, the trial court entered an order concluding in pertinent part as follows:

2. There is nothing in the Nationwide Policy which suggests that [plaintiff's] providing counsel to an insured waives attorney-client privilege.

3. There was an attorney-client relationship between [defendant] and [Patterson] in [the underlying action].

4. There was no attorney-client relationship between [Patterson] and [plaintiff] in [the underlying action].

. . . .

7. The file maintained by [Patterson] in the defense of [the underlying action] was generated as attorney-client materials with respect to [defendant] as a result of the contractual duty [plaintiff] was fulfilling in providing a defense to [defendant].

. . . .

10. It was a breach of the attorney-client relationship for confidential communications by and between [defendant] and [Patterson] in [the underlying action] to be disclosed to [plaintiff].

. . . .

16. The Court in the exercise of its discretion deems that the imposition of sanctions and/or an order compelling discovery are not justified under the facts and circumstances of the facts of this case.

Based in part upon these conclusions of law, the trial court denied plaintiff's motion. It is from this order that plaintiff appeals.

---

**[1]** We note initially that an appeal from an order denying a motion to compel discovery is generally interlocutory in nature. *Shelton v. Morehead Memorial Hospital,* 318 N.C. 76, 80, 347 S.E.2d 824, 827 (1986); *Mack v. Moore,* 91 N.C. App. 478, 480, 372 S.E.2d 314, 316 (1988), *disc. review denied,* 323 N.C. 704, 377 S.E.2d 225 (1989). However, by order issued 25 March 2004, this Court denied defendant's motion to dismiss the instant appeal as interlocutory. Therefore, we conclude that plaintiff's appeal is properly before us.

**[2]** We also note that both parties assigned error to the trial court's order in the instant case. However, because defendant failed to offer any support in his brief for his cross-assignments of error, those assignments of error are deemed abandoned. N.C.R. App. P. 28(b)(6) (2005). Accordingly, we limit our present review to those assignments of error properly preserved by plaintiff for appellate review.

The issues on appeal are whether the trial court erred by: (I) concluding that no attorney-client relationship existed between plaintiff and Patterson; (II) concluding that the attorney-client relationship between defendant and Patterson prevented Patterson from disclosing to plaintiff any communications between Patterson and defendant; (III) concluding that Patterson breached the attorney-client relationship by providing the entire file from the underlying action to plaintiff; (IV) refusing to grant plaintiff's motion for sanctions; (V) ordering that Patterson's file and all copies of documents contained therein be sealed pending further orders.

"[I]t is well established that orders regarding discovery matters are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of that discretion." *Evans v. United Servs. Auto. Ass'n,* 142 N.C. App. 18, 27, 541 S.E.2d 782, 788 (citations omitted), *cert. denied,* 353 N.C. 371, 547 S.E.2d 810 (2001). To demonstrate an abuse of discretion, the appellant must show that the trial court's ruling was manifestly unsupported by reason, *Clark v. Penland,* 146 N.C. App. 288, 291, 552 S.E.2d 243, 245 (2001), or could not be the product of a reasoned decision. *Chavis v. Thetford Prop.*

*Mgmt., Inc.*, 155 N.C. App. 769, 771, 573 S.E.2d 920, 921 (2003). This Court is not allowed to substitute its own judgment for that of the trial court. *Id.*

### I. Attorney-Client Relationship Between Plaintiff and Patterson

[3] Plaintiff first argues that the trial court erred by concluding that no attorney-client relationship existed between it and Patterson. Plaintiff asserts that this conclusion was counter to the ethics opinions of our State Bar and the established standards of insurance law practice. We agree.

Our Supreme Court has previously noted that while " 'questions of propriety and ethics are ordinarily for the consideration of the [North Carolina State] Bar' because that organization was expressly created by the legislature to deal with such questions, . . . the power to regulate the conduct of attorneys is held concurrently by the Bar and the court." *Gardner v. N.C. State Bar*, 316 N.C. 285, 287-88, 341 S.E.2d 517, 519 (1986) (quoting *McMichael v. Proctor*, 243 N.C. 479, 485, 91 S.E.2d 231, 235 (1956)). In North Carolina State Bar RPC 92 (January 17, 1991) ("RPC 92"), the State Bar recognized that although the attorney's primary allegiance must remain with the insured, an attorney may enter into dual representation of both an insurer and an insured. In such an instance, "[t]he attorney should keep the insurance company informed as to the wishes of the insured concerning the defense of the case and settlement." *Id.* This ruling was consistent with North Carolina State Bar RPC 91 (January 17, 1991) ("RPC 91"), which noted that "[w]henever defense counsel is employed by an insurance company to defend an insured against a claim, he or she represents both the insurer and the insured." In a recent Formal Ethics Opinion, the State Bar noted that its "[p]rior ethics opinions ha[d] firmly established that a lawyer defending an insured at the request of an insurer represents both clients." 2003 Formal Ethics Opinion 12 (October 21, 2004) ("FEO 12").

In the instant case, despite this well-established doctrine, the trial court concluded that no attorney-client relationship existed between plaintiff and Patterson. In support of this conclusion, the trial court relied upon the contractual nature of Patterson's hiring, in that plaintiff "provided counsel to [defendant] . . . pursuant to the Nationwide Policy issued to [defendant]." However, we note such a contractual provision of counsel is not unlike the employment of counsel referred to by RPC 91 and endorsed by FEO 12, which, along with RPC 92, "envisioned that . . . work product would be shared

with the insurance company [as well as the insured] so that *both clients* are fully informed of their lawyer's opinion" on representation issues. (emphasis added). In light of the foregoing, we conclude that a tripartite attorney-client relationship existed in the instant case, whereby Patterson provided "joint" or "dual" representation to both plaintiff and defendant. Accordingly, the trial court erred by determining that no attorney-client relationship existed between plaintiff and Patterson.

## II. Attorney-Client Relationship Between Defendant and Patterson

[4] Plaintiff next argues that the trial court erred by concluding that the attorney-client relationship between defendant and Patterson prevented Patterson from disclosing to plaintiff any communications between Patterson and defendant. Plaintiff asserts that the attorney-client privilege is inapplicable to those communications related to the underlying action. We agree.

This Court has previously recognized that "the attorney-client privilege may result in the exclusion of evidence which is otherwise relevant and material." *Evans*, 142 N.C. App. at 31, 541 S.E.2d at 790. Our courts are obligated to "strictly construe" the attorney-client privilege, and to limit it to the purpose for which it exists: " 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.' " *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 66 L. Ed. 2d 584, 591 (1981)).

In construing the effect of the tripartite relationship between an attorney, an insurer, and an insured, several courts across the country have held that the "common interest" or "joint client" doctrine applies. Under this doctrine, communications between the insured and the retained attorney are not privileged to the extent that they relate to the defense for which the insurer has retained the attorney. *See, e.g., Northwood Nursing & Convalescent Home, Inc. v. Continental Ins. Co.*, 161 F.R.D. 293, 297 (E.D. Pa. 1995) ("Because [the insurer] has agreed to defend this action, [the insureds] have no reasonable expectation of privilege."); *North River Ins. v. Philadelphia Reinsurance*, 797 F. Supp. 363, 366 (D.N.J. 1992) ("The common interest doctrine has been recognized in the insured/insurer context when counsel has been retained or paid for by the insurer, and allows either party to obtain attorney-client communications related to the underlying facts giving rise to the claim, because the interests of the insured and insurer in defeating the third-party claim against the

insured are so close that 'no reasonable expectation of confidentiality' is said to exist." (citation omitted)); *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 69 (D.N.J. 1992) ("It seems clear that use of the [common interest] doctrine is warranted when there is a dispute between [an] insurer and [an] insured regarding underlying litigation in which the insured was represented by an attorney appointed by the insurer."); *Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 193, 579 N.E.2d 322, 328 (1991) (holding that common interest doctrine applies as between insurer and insured); *Brasseaux v. Girouard*, 214 So. 2d 401, 410 (recognizing that in suits between an insurer and an insured, communications made by the insured to the insurer's counsel during a period of simultaneous representation are not privileged where the issue to which the communications relate concerns matters of the legal representation of the insured), *cert. denied*, 253 La. 60, 216 So. 2d 307 (1968); *Goldberg v. American Home Assurance Co.*, 80 A.D.2d 409, 413, 439 N.Y.S.2d 2, 5 (1981) (common interest doctrine "especially" applies "where an insured and his insurer initially have a common interest in defending an action against the former[.]"). *See also* 81 Am. Jur. 2d *Witnesses* § 434 (2004) ("When an insurer, as required by its contract of insurance, employs counsel to defend its insured, any communication with the lawyer concerning the handling of the claim against the insured is necessarily a matter of common interest to both the insured and the insurer, and the attorney-client privilege is inapplicable.").

In North Carolina, our courts have previously recognized the common interest or joint client doctrine, noting that "as a general rule, where two or more persons employ the same attorney to act for them in some business transaction, their communications to him are not ordinarily privileged *inter sese.*" *Dobias v. White*, 240 N.C. 680, 685, 83 S.E.2d 785, 788 (1954) (citing *Carey v. Carey*, 108 N.C. 267, 12 S.E. 1038 (1891) (noting that privilege rule does not apply to communications between parties and to a joint attorney) and *Michael v. Foil*, 100 N.C. 178, 189, 6 S.E. 264, 269 (1888) ("[A] communication made to counsel for two defendants is not privileged from disclosure in a subsequent suit between the two.") (internal quotation marks omitted)); *accord Brown v. Green*, 3 N.C. App. 506, 512, 165 S.E.2d 534, 538 (1969). The rationale for the doctrine rests upon the non-confidential nature of communications between the parties during the tripartite relationship. "If it appears by extraneous evidence or from the nature of a transaction or communication that they were not regarded as confidential, or that they were made for the purpose of being conveyed by the attorney to others, [communications] are stripped of the

idea of a confidential disclosure and are not privileged." *Dobias*, 240 N.C. at 684-85, 83 S.E.2d at 788 (citation omitted).

In light of the foregoing, we are persuaded that the common interest or joint client doctrine applies to the context of insurance litigation in North Carolina. Therefore, where, as here, an insurance company retains counsel for the benefit of its insured, those communications related to the representation and directed to the retained attorney by the insured are not privileged as between the insurer and the insured. Nevertheless, we note that application of the common interest or joint client doctrine does not lead to the conclusion that all of the communications between defendant and Patterson were unprivileged. Instead, the attorney-client privilege still attaches to those communications unrelated to the defense of the underlying action, as well as those communications regarding issues adverse between the insurer and the insured. Specifically, "[c]ommunications that relate to an issue of coverage . . . are not discoverable . . . because the interests of the insurer and its insured with respect to the issue of coverage are always adverse." *North River Ins.*, 797 F. Supp. at 367 (citations omitted).

Under this analysis, Exhibit 4 in the instant case—a letter from defendant to Patterson discussing discovery responses to the underlying action—was not privileged. The letter is directly related to plaintiff's defense of the underlying action, and thus clearly covered by the common interest doctrine. However, defendant was correct in declining to answer the following question from his deposition: "So did [Patterson] give you any advice as to whether the claims of malicious prosecution or punitive damages were covered or not covered under the policy?" This question involves an issue of coverage, which, as detailed above, is adverse to plaintiff's representation of defendant and unrelated to plaintiff's defense of the underlying action.

Plaintiff maintains that even those communications unrelated to plaintiff's defense of the underlying action and concerning issues of coverage should be discoverable in the instant case. In support of this assertion, plaintiff contends that by asserting counterclaims against plaintiff based upon his alleged improper representation by Patterson, defendant has waived the privilege which covers the communications. We agree.

We note initially that our review of this issue is limited by the premature termination of the deposition and the appeal of the trial court order prior to further discovery motions. As discussed above, defend-

ant terminated the deposition prior to its completion, citing the attorney-client privilege. While we recognize the need to be vigilant in protecting the attorney-client privilege, in the instant case, because of the early termination of the deposition and the immediate appeal of the trial court's order, we are left with no idea of the degree to which defendant concedes the attorney-client privilege has been waived. A better practice would have been to have proceeded with the deposition, with defendant asserting the privilege as to each question he deemed inappropriate in light of the privilege. By failing to follow this approach, both the trial court and this Court must apply the attorney-client privilege in the abstract. Nevertheless, we have examined the record in the instant case, and, in light of defendant's challenges to Patterson's representation, we conclude that defendant has waived the privilege with respect to those communications unrelated to the underlying action and adverse to plaintiff.

As discussed above, in his answer to the declaratory judgment complaint, defendant asserts eight counterclaims against plaintiff. In his second counterclaim, defendant alleges that plaintiff "failed to properly assess and evaluate the claims" against him and breached its duty "to defend and handle" the claims against him "competently and with due regard to" his rights. To the extent defendant contends that Patterson negligently defended him in the underlying action and negligently failed to resolve the claims, such allegations constitute a waiver of the attorney-client privilege. *See State v. Taylor*, 327 N.C. 147, 152, 393 S.E.2d 801, 805 (1990) (concluding that a defendant making a claim that an attorney rendered ineffective assistance of counsel waives the attorney-client privilege with respect to those matters relevant to his allegations). This counterclaim refers to what plaintiff led defendant to believe, and it alleges that plaintiff failed to keep defendant "properly advised of the status of the settlement negotiations[.]" Similar allegations are contained within defendant's fourth counterclaim, which states that defendant "justifiably relied on the information supplied by [plaintiff]" regarding the "status of the settlement negotiations . . . ." Moreover, in his affidavit, defendant repeatedly recites communications he received from Patterson regarding plaintiff's position with respect to settlement and detailing how the settlement negotiations were proceeding. *See Blackmon v. Bumgardner*, 135 N.C. App. 125, 141, 519 S.E.2d 335, 345 (1999) (concluding that attorney-client privilege is waived when client offers testimony concerning the substance of the communication). In light of the foregoing, we conclude that defendant has waived the attorney-client privilege with respect to those issues

which were unrelated to the underlying action and which involved questions of coverage.

### III.  Patterson's Breach of the Attorney-Client Relationship

**[5]** Plaintiff next argues that the trial court erred by concluding that Patterson breached his attorney-client relationship with defendant when he provided plaintiff with the entire file from the underlying action. Plaintiff asserts that the trial court's conclusion results from improper determinations that no attorney-client relationship existed between plaintiff and Patterson and that all communications between defendant and Patterson were privileged from disclosure. However, while the trial court's conclusion might have been based upon prior improper determinations, we are not persuaded that the trial court erred by concluding that Patterson was prohibited from providing the file to plaintiff in a wholesale manner. As discussed above, some communications contained in the file may have been privileged, including those communications unrelated to the underlying action or defendant's counterclaims, those communications regarding coverage issues made prior to defendant's counterclaims, and those communications unrelated to the conduct forming the basis of defendant's counterclaims. Therefore, we agree that Patterson's file should not have been provided to plaintiff in a wholesale manner. Instead, the file should have been submitted to the trial court for *in camera* review aimed at determining which documents in the file were privileged. Accordingly, we conclude that the trial court did not err by ruling that Patterson breached his attorney-client relationship with defendant when he provided plaintiff with the entire file from the underlying action.

### IV.  Trial Court's Refusal To Sanction Defendant

**[6]** Plaintiff next argues that the trial court erred by refusing to grant plaintiff's motion for sanctions. Plaintiff asserts that because defendant was unjustified in refusing to answer certain questions and prematurely terminated his deposition, the trial court abused its discretion by refusing to sanction him. We disagree.

The record reflects that with respect to this issue, the trial court concluded as follows:

14. The refusal of [defendant] and his counsel to respond to the questions posed concerning the communications between [defendant] and [] Patterson, as well as the termination of the deposition of [defendant] for the breach of the attorney-client

privilege, was substantially justified within the meaning of the Commentary to Rule 37(a)(4) of the North Carolina Rules of Civil Procedure[.]

15. The refusal of [defendant] and his counsel to respond to the questions posed concerning the communications between [defendant] and [] Patterson as well as the termination of the deposition of [defendant] for the breach of the attorney-client privilege were actions taken in good faith and not for the mere purpose of delay and/or obfuscation.

16. The Court in the exercise of its discretion deems that the imposition of sanctions and/or an order compelling discovery are not justified under the facts and circumstances of the facts of this case.

"The choice of sanctions under Rule 37 lies within the court's discretion and will not be overturned on appeal absent a showing of abuse of that discretion." *Routh v. Weaver*, 67 N.C. App. 426, 429, 313 S.E.2d 793, 795 (1984). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *Hursey v. Homes By Design, Inc.*, 121 N.C. App. 175, 177, 464 S.E.2d 504, 505 (1995). In the instant case, in its order denying sanctions, the trial court noted that "the privilege issue involved in this motion is a question of first impression[,]" and the trial court concluded that defendant was "substantially justified" in relying on the attorney-client privilege in terminating the deposition. After reviewing the record, we conclude that plaintiff has failed to demonstrate that the trial court's decision was arbitrary and unreasoned. Accordingly, the trial court's decision not to impose sanctions is affirmed.

## V. Trial Court's Decision To Seal Patterson's File

[7] Plaintiff's final argument is that the trial court erred by requiring that Patterson's file remain sealed pending further orders from the court. However, in light of our prior conclusions regarding those portions of Patterson's file which were discoverable and whether defendant waived his privilege with respect to the remaining portions, we need not reach the merits of this argument. Accordingly, plaintiff's final argument is dismissed.

## VI. Conclusion

In summary, we conclude that the trial court erred by determining that (a) no attorney-client relationship existed between plaintiff

NATIONWIDE MUT. FIRE INS. CO. v. BOURLON

[172 N.C. App. 595 (2005)]

and Patterson, and (b) the attorney-client relationship between defendant and Patterson prevented Patterson from disclosing to plaintiff his communications with defendant. As detailed above, Patterson, plaintiff, and defendant were engaged in a tripartite relationship, whereby Patterson served as attorney for both plaintiff and defendant. By virtue of this relationship, any communications between Patterson and defendant related to plaintiff's defense of the underlying action were discoverable, while those communications unrelated to the underlying action and those communications involving issues of coverage were not discoverable. Thus, we also conclude Patterson breached his attorney-client relationship by turning over the file to plaintiff wholesale. However, while we further conclude that the trial court did not err in refusing to sanction defendant for failing to answer questions and prematurely terminating the deposition, under the facts of the instant case, we nevertheless conclude that defendant has waived his right to assert his attorney-client privilege with respect to those communications relevant to his counterclaims although unrelated to the underlying action and involving issues of coverage. Therefore, we hold that plaintiff is entitled to discovery regarding those matters, and, accordingly, we affirm the trial court's order in part and reverse it in part.

Affirmed in part; reversed in part.

Judge GEER concurs.

Judge TYSON concurs in part and dissents in part.

TYSON, Judge concurring in part, dissenting in part.

I concur with the majority's opinion that: (1) the trial court did not err by ruling Patterson breached his attorney-client relationship with defendant by providing plaintiff with the entire file from the underlying action; and (2) the trial court's decision to deny plaintiff's motion for sanctions should be affirmed.

Under the facts and posture of the appeal before us, I respectfully dissent from the majority opinion's holding that: (1) an attorney-client relationship existed between plaintiff and Patterson; (2) the attorney-client relationship between defendant and Patterson is inapplicable to those communications related to the underlying action; and (3) defendant waived the attorney-client privilege.

NATIONWIDE MUT. FIRE INS. CO. v. BOURLON

[172 N.C. App. 595 (2005)]

## I.  Standard of Review

This Court has previously stated, it "is well established that orders regarding discovery matters are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of that discretion." *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 27, 541 S.E.2d 782, 788 (citations omitted), *cert. denied and appeal dismissed*, 353 N.C. 371, 547 S.E.2d 810 (2001). As stated in *Evans*, we "examine the trial court's application of . . . the attorney-client privilege under an abuse of discretion standard." 142 N.C. App. at 27, 541 S.E.2d at 788. To show an abuse of discretion and reverse the trial court's order, Nationwide, as appellant, has the burden to show the trial court's rulings are "manifestly unsupported by reason," *Clark v. Penland*, 146 N.C. App. 288, 291, 552 S.E.2d 243, 245 (2001) (quotation omitted), or "could not be the product of a reasoned decision," *Chavis v. Thetford Prop. Mgmt. Inc.*, 155 N.C. App. 769, 771, 573 S.E.2d 920, 921 (2003) (citing *Long v. Harris*, 137 N.C. App. 461, 464-65, 528 S.E.2d 633, 635 (2000)). We all agree our review at bar is not *de novo*. The appellate court is not allowed to substitute our judgment for that of the trial court on the grounds we may have arrived at a different conclusion and result based on the evidence presented and findings of fact. *Id.*

## II.  Attorney-Client Privilege

Plaintiff argues the trial court erred by concluding no attorney-client privilege existed between plaintiff and Patterson. Under: (1) our standard of review; (2) the specific facts here; and (3) the procedural posture of this appeal, at this time, I disagree.

Our Supreme Court recently addressed the importance of the attorney-client relationship and its attendant privileges.

> The public's interest in protecting the attorney-client privilege is no trivial consideration, as this protection for confidential communications is one of the oldest and most revered in law. The privilege has its foundation in the common law and can be traced back to the sixteenth century. The attorney-client privilege is well-grounded in the jurisprudence of this State. When the relationship of attorney and client exists, all confidential communications made by the client to his attorney on the faith of such relationship are privileged and may not be disclosed.

*In re Investigation of Death of Eric Miller*, 357 N.C. 316, 328, 584 S.E.2d. 772, 782 (2003) (internal citations and quotations omitted).

This Court has recognized, "the attorney-client privilege may result in the exclusion of evidence which is otherwise relevant and material." *Evans*, 142 N.C. App. at 31, 541 S.E.2d at 790.

In asserting the privilege, the claimant carries the burden of showing:

(1) the relation of attorney and client existed at the time the communication was made[;] (2) the communication was made in confidence[;] (3) the communication relates to a matter about which the attorney is being professionally consulted[;] (4) the communication was made in the course of giving or seeking legal advice for a proper purpose, although litigation need not be contemplated[;] and (5) the client has not waived the privilege.

*Id.* at 32, 541 S.E.2d at 791 (internal citations and quotations omitted).

"[T]he power to regulate the conduct of attorneys is held concurrently by the Bar and the court." *Gardner v. N.C. State Bar*, 316 N.C. 285, 288, 341 S.E.2d 517, 519 (1986) (citing with approval CPR 326). Rule 1.8(f) of the North Carolina State Bar Revised Rules of Professional Conduct (2005) provides:

A lawyer shall not accept compensation for representing a client from one other than the client unless:

(1) the client gives informed consent;

(2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and

(3) information relating to representation of a client is protected as required by Rule 1.6.

Rule 1.6 of the North Carolina State Bar Revised Rules of Professional Conduct (2005) states:

(a) A lawyer shall not reveal information acquired during the professional relationship with a client unless the client gives informed consent . . . .

(b) A lawyer may reveal information protected from disclosure by paragraph (a) to the extent the lawyer reasonably believes necessary:

(1) to comply with the Rules of Professional Conduct, the law or court order;

(2) to prevent the commission of a crime by the client;

(3) to prevent reasonably certain death or bodily harm;

(4) to prevent, mitigate, or rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services were used;

(5) to secure legal advice about the lawyer's compliance with these Rules;

(6) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client; to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved; or to respond to allegations in any proceeding concerning the lawyer's representation of the client . . . .

The North Carolina State Bar issued guidance to insurers who are under a contractual duty to hire counsel to defend insureds.

While Rule 6(b)(1) obligates an attorney to keep the client reasonably informed about the status of the case and to comply with reasonable requests for information, there is nothing in the rules that requires defense counsel to furnish to the insured correspondence directed to the insurer during defense counsel's active representation of the insured. The representation of insured and insurer is a dual one, *but the attorney's primary allegiance is to the insured, whose best interest must be served at all times.* The attorney should keep the insurance company informed as to the wishes of the insured concerning the defense of the case and settlement. *The attorney should also keep the insured informed of his or her evaluation of the case as well as the assessment of the insurance company, with appropriate advice to the insured with regard to the employment of independent counsel whenever the attorney cannot fully represent his or her interest.* Further, if the attorney reasonably believes that it is in the best interest of the insured to provide him or her with work product directed to the insurer, such *information may be disclosed to the insured without violating any ethical duty to the insurer.*

North Carolina State Bar RPC 92 (January 17, 1991) ("RPC 92") (emphasis supplied). Clearly under the last sentences of RPC 92, plaintiff cannot claim or assert any attorney-client privilege to prevent disclosure to defendant of its communications with Patterson,

who was under a continuing date to act in defendant's "best interests" and to advise defendant to employ "independent counsel." *Id.*

In *Harleysville Mut. Ins. Co. v. Berkley Ins. Co.*, we recently stated, "when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." 169 N.C. App. 556, 562, 610 S.E.2d 215, 219 (2005). Here, although plaintiff reserved its rights to indemnify defendant for the malicious prosecution judgment, it does not dispute the policy contained coverage for other claims and a duty to defend defendant that triggered an attorney-client privilege. "[T]he insurer's duty to defend the insured is broader than its obligation to pay damages . . . ." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377, *reh'g denied*, 316 N.C. 386, 346 S.E.2d 134 (1986). Plaintiff's contractual duty to provide an attorney to defend defendant's "best interests" existed throughout Patterson's representation. RPC 92.

### A. Attorney-Client Relationship

Plaintiff's brief concedes it "does not dispute that the relationship between Mr. Patterson and defendant was one of attorney and client." The trial court's findings of fact and conclusion of law that defendant established the first factor under *Evans* is stipulated. 142 N.C. App. at 32, 541 S.E.2d at 791 (citation omitted) ("[T]he relation of attorney and client existed at the time the communication was made.").

### B. The Insurer

Under these facts, plaintiff fails to show the trial court abused its discretion in upholding the attorney-client privilege between defendant and Patterson. In finding of fact number five, the trial court found "[plaintiff] retained the late Lee A. Patterson, II, to represent [defendant] in the [underlying] Civil Action." Plaintiff did not except to this or *any* other findings of fact and they are binding on appeal. *See Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000) ("Where findings of fact are challenged on appeal, each contested finding of fact must be separately assigned as error, and the failure to do so results in a waiver of the right to challenge the sufficiency of the evidence to support the finding." (citations omitted)).

Plaintiff also recognizes, under RPC 92, that "[t]he representation of insured and insurer is a dual one, but the attorney's *primary allegiance is to the insured,* whose *best interest* must be served

*at all times.*" (Emphasis supplied). Patterson's "primary" allegiance and duty was to represent defendant's "best interests" in the underlying litigation. *Id.*

As plaintiff: (1) failed to except to the trial court's findings of fact that Patterson was hired to represent defendant on all claims asserted by Axarlis; (2) concedes it "continued to provide a defense to [defendant], through [] Patterson, as to all claims asserted against him in the Civil Action;" and (3) failed to show defendant waived or consented to disclosure, plaintiff has failed to show the trial court erred in finding no attorney-client privilege extended between it and Patterson. Under the facts here, the trial court's ruling is not "manifestly unsupported by reason" as between the attorney, the insured, the insurer with adverse interests to the insured, and the attorney-client privilege existed between defendant and Patterson, and not between Patterson and plaintiff. *Clark*, 146 N.C. App. at 291, 552 S.E.2d at 245 (quotation omitted).

### C. The Insured

Plaintiff also contends the trial court erred in concluding that the attorney-client privilege prevents disclosure of communications made between Patterson and defendant during the course of the underlying action. I disagree.

### 1. Confidential Communication

The law regarding what type of communication is confidential and privileged is well-established:

> 'Only confidential communications are protected. If it appears by extraneous evidence or from the nature of a transaction or communication that they were not regarded as confidential, or that they were made for the purpose of being conveyed by the attorney to others, they are stripped of the idea of a confidential disclosure and are not privileged.'

*Evans*, 142 N.C. App. at 32, 541 S.E.2d at 791 (quoting *Dobias v. White*, 240 N.C. 680, 684-85, 83 S.E.2d 785, 788 (1954) (citation omitted)). Plaintiff demanded in its motion for sanctions and/or to compel discovery that it was entitled to compel defendant "to fully and adequately respond *to all questions* concerning his communications with [] Patterson." (Emphasis supplied).

Plaintiff argues a letter written from defendant to Patterson regarding "draft responses to discovery requests served by Axarlis'

counsel" and "defendant's apparent concern about the possibility of an excess verdict" was not privileged communications. Plaintiff asserts defendant was not permitted to seek legal advice from Patterson regarding "the excess exposure issue." I disagree.

As noted earlier, plaintiff did not assign error to finding of fact number five, which states, "[plaintiff] further notified [defendant] that although it would defend all of Mr. Axarlis' claims against [defendant] in the [underlying] Civil Action, [plaintiff] was reserving its right to decline to indemnify [defendant] for any damages [in the malicious prosecution claim]," or to finding of fact number six, which states "[plaintiff] continued to provide a defense to [defendant], through [] Patterson as to all claims asserted against him in the [underlying] Civil Action." Plaintiff concedes in its brief that it "provided a defense to defendant throughout the pendency of the Prior Civil Action." Defendant asserts in his sworn affidavit he was "informed that plaintiff would in fact provide legal representation for both the dog bite case and the claim for malicious prosecution."

These findings and plaintiff's concession that an attorney-client privilege existed throughout Patterson's representation of defendant in the underlying action support the trial court's conclusion that such communication was "made in anticipation that [it] would be confidential . . ., made at a time that an attorney-client relationship existed . . . in the course of . . . seeking legal advice and for a proper purpose, and made regarding a matter for which [the attorney] was being professionally consulted." *In re Investigation of Death of Eric Miller*, 358 N.C. 364, 367-68, 595 S.E.2d 120, 122 (2004); *see also Evans*, 142 N.C. App. at 32, 541 S.E.2d at 791.

The entire heart of defendant's claims is plaintiff's failure to settle all claims in Axarlis's complaint within the policy limits and its indemnity of defendant for the malicious prosecution judgment. All other claims, except the malicious prosecution judgment arising in the underlying action, were settled by plaintiff. The sole remaining issue between plaintiff and defendant involves a claim where the parties' interests were in conflict and adverse *ab initio*. Plaintiff and the majority's opinion do not offer any controlling authority to show it was entitled access to *all* communications between defendant and Patterson. The facts plainly show that plaintiff's and defendant's interests in the policy's coverage or indemnity for any sums recovered by Axarlis from the malicious prosecution judgment were in conflict from the beginning of Patterson's representation. RPC 92.

Plaintiff and the majority's opinion cites cases discussing "common interests" and "joint client." None of these cases directly address the issue before us where the parties represented have adverse interests that were present from the beginning of the representation. In 1888, our Supreme Court in *Michael v. Foil* addressed the issue of an attorney testifying who jointly represented the parties as a scrivner. 100 N.C. 178, 6 S.E. 264 (1888). The attorney prepared a deed that omitted a reference to a division of payment for mineral rights. *Id.* at 182-83, 6 S.E. at 266. In a later trial to collect one-half of the proceeds from the sale of the mineral rights, the attorney was tendered as a witness. *Id.* at 182, 6 S.E. at 266. At trial, the defendant objected. *Id.* The Court stated, "the general rule that a legal adviser will not be permitted to disclose communications or information derived from clients as such . . . ." *Id.* at 189, 6 S.E. at 269. The Court continued that as

> between the parties themselves, [] the attorney is under the same obligations to both of them. The matter communicated was not, in its nature, private as between *these parties, who were both present at the time,* and consequently, so far as they are concerned, it cannot, in any sense, be deemed the subject of a confidential communication made by one which the duty of the attorney prohibited him from disclosing to the other. The reason of the rule has no application in such case. The *statements of parties made in the presence of each other may be proved by their attorneys* as well as by other persons, because such statements are not, in their nature, confidential, and cannot be regarded as privileged communications. The testimony of the attorney was therefore properly admitted in this case.

*Id.* at 190, 6 S.E. at 269 (quotation omitted) (emphasis supplied).

"[A]s a general rule, where two or more persons employ the same attorney to act for them in some business transaction, their communications to him are not ordinarily privileged *inter sese.*" *Dobias*, 240 N.C. at 685, 83 S.E.2d at 788 (citations omitted); *accord Brown v. Green*, 3 N.C. App. 506, 512, 165 S.E.2d 534, 538 (1969) (quotations omitted). In *Michael, Dobias,* and *Brown,* the parties jointly represented did not have adverse interests at the time the communications were made to common counsel. The attorneys in all cases were employed to act solely as a scrivner to memorialize agreements the parties had previously reached. In neither case were privileged communications disclosed after adverse interests arose between the parties jointly represented. *Michael,* 100 N.C. at 189, 6 S.E. at 269;

*Dobias*, 240 N.C. at 684-85, 83 S.E.2d at 788-89; *Brown*, 3 N.C. App. at 512, 165 S.E.2d at 538.

Plaintiff seeks to compel disclosure of *all* communications between defendant and Patterson and asserts *no* communications between them were made in confidence or were privileged. Plaintiff and defendant both cite a passel of cases from other jurisdictions regarding the attorney-client relationship between the insurer, the insured, and the attorney.

Courts across the country are divided on whether the "common interest" or "joint client" doctrine applies to the tripartite relationship between the insurer, the insured, and the retained attorney. Some courts hold that communications between the insured and the retained attorney are not privileged to the extent that they relate to the defense for which the insurer has retained the attorney. *See, e.g., Northwood Nursing Home v. Continental Ins.*, 161 F.R.D. 293, 297 (E.D. Pa., 1995) ("Because [the insurer] has agreed to defend this action, [the insureds] have no reasonable expectation of privilege."); *North River Ins. v. Philadelphia Reinsurance*, 797 F. Supp. 363, 366 (D.N.J. 1992) ("The common interest doctrine has been recognized in the insured/insurer context when counsel has been retained or paid for by the insurer, and allows either party to obtain attorney-client communications related to the underlying facts giving rise to the claim, because the interests of the insured and insurer in defeating the third-party claim against the insured are so close that no reasonable expectations of confidentiality is said to exist." (internal quotation marks omitted) (quotation omitted)), *aff'd in part, rev'd in part by, sub nomine at* 52 F.3d 1194 (3d Cir. N.J. 1995); *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 69 (D.N.J. 1992) ("It seems clear that use of the ["common interest"] doctrine is warranted when there is a dispute between insurer and insured regarding underlying litigation in which the insured was represented by an attorney appointed by the insurer." (citations omitted)), *rev'd and remanded on other grounds*, 124 F.3d 508 (3d Cir. N.J. 1997); *Waste Management v. Intern. Surplus Lines*, 144 Ill. 2d 178, 193, 579 N.E.2d 322, 328-29 (1991) (holding that "common interest" doctrine applies as between insurer and insured); *Brasseaux v. Girouard*, 214 So. 2d 401, 410 (recognizing that in suits between an insurer and the insured, communications made by the insured to the insurer's counsel during a period of simultaneous representation are not privileged where the issue to which the communications relate concerns matters of the legal representation of the insured), *cert. denied*, 253 La. 60, 216 So. 2d 307 (1968);

*Goldberg v. American Home Assur. Co.*, 80 App. Div. 2d 409, 413, 439 N.Y.S.2d 2, 5 (1981) (citations omitted) (common interest doctrine "especially" applies "where an insured and his insurer initially have a common interest in defending an action against the former . . . .").

Defendant responds and argues that jurisdictions that recognize the "common interest" or "joint representation" of the attorney to the insured and insurer hold the *primary* ethical duty of the attorney is *always* to the insured. *See, e.g., Prevratil v. Mohr*, 145 N.J. 180, 183, 678 A.2d 243, 245 (1996); *Lieberman v. Employers Ins. of Wausau*, 84 N.J. 325, 419 A.2d 417 (1980); *Employer's Casualty Co. v. Tilley*, 496 S.W.2d 552 (Tex. 1973); *Paradigm Ins. v. Langerman Law Offices*, 196 Ariz. 573, 2 P.3d 663 (Ariz. Ct. App. 1999), *vacated in part and remanded*, 200 Ariz. 146, 24 P.3d 593 (Ariz. 2001); *American Employers Ins. Co. v. Goble Aircraft Specialties, Inc.*, 205 Misc. 1066, 131 N.Y.S.2d 393 (N.Y. Sup. Ct. 1954); *Bogard v. Employers Casualty Co.*, 164 Cal. App.3d 602, 210 Cal. Rptr. 578 (Cal. App. 2d Dist. 1985).

Defendant also cites *In re: Petition of Youngblood*, 895 S.W.2d 322 (Tenn. 1995) (holding that employment of attorney by insurer does not create attorney-client relationship between insurer and attorney, and also does not impose any duty of loyalty to the insurer); *Church v. Hofer, Inc.*, 844 P.2d 887, 888 (Okl. App., 1992) (holding although the insured became the attorney's client, with all the ethical considerations that are part of the attorney-client relationship, the insured was not obligated to pay for the attorney's services after the insurer declared bankruptcy); *Pine Island Farmers v. Erstad & Riemer*, 649 N.W.2d 444, 452 (Minn. 2002) (holding the insurer only becomes a co-client of the attorney it hires to represent the insured if there is no conflict of interest and the insured gives express consent to dual representation after full consultation). Defendant argues under either analysis of "primary duty to the insured" or "no duty to the insurer," the trial court's order must be affirmed. I agree.

Without reviewing the specific rules of professional responsibility and the statutory, administrative, and common law in each of these jurisdictions, we do not know the context and basis for each of these holdings.

However, in addition to the North Carolina precedents cited above, the North Carolina State Bar has published Rules of Professional Conduct Opinions ("RPC") to advise counsel under the 1985 Rules of Professional Conduct, effective from 1 January 1986

until 24 July 1997, and Formal Ethics Opinions ("FEO") under the Revised Rules of Professional Conduct, effective 25 July 1997 until present. In addition to RPC 92 previously set out in full above, the State Bar has issued additional rulings regarding multiple clients, attorneys hired by the insurers to represent the insured, and conflicts or adverse interests among multiple clients represented.

The State Bar has consistently advised counsel that their "primary allegiance" is to the insured, directed the attorney to uphold the insured's "best interests," and required the attorney to advise the insured to retain separate counsel in the event the attorney hired to defend the insured cannot exercise independent "professional judgment" or maintain "the client-lawyer relationship." N.C. State Bar Rule 1.8(f)(2); see RPC 56 (April 14, 1989) (an attorney may represent a plaintiff against an insurance company's insured while defending other persons insured by the company in unrelated matters); RPC 91 (January 17, 1991) (an attorney employed by the insurer to represent the insured and its own interest may not send the insurer a letter on behalf of the insured demanding settlement within the policy limits); RPC 103 (January 18, 1991) (an attorney for the insured and the insurer may not enter voluntary dismissal of the insured's counterclaim without the insured's consent); RPC 111 (July 12, 1991) (an attorney retained by a liability insurer to defend its insured may not advise [the] insured or [the] insurer regarding the plaintiff's offer to limit the insured's liability in exchange for consent to an amendment of the complaint to add a punitive damages claim); RPC 112 (July 12, 1991) (an attorney retained by an insurer to defend its insured may not advise insurer or insured regarding the plaintiff's offer to limit the insured's liability in exchange for an admission of liability); RPC 153 (January 15, 1993) (in cases of multiple representation, an attorney who has been discharged by one client must deliver to that client as part of that client's file information entrusted to the attorney by the other client); RPC 154 (January 15, 1993) (an attorney may not represent the insured, her liability insurer and the same insurer relative to underinsured motorist coverage carried by the plaintiff); RPC 172 (April 15, 1994) (an attorney retained by an insurance carrier to defend an insured has no ethical obligation to represent the insured on a compulsory counterclaim *provided* the attorney apprises the insured of the counterclaim in sufficient time for the insured to retain separate counsel); RPC 177 (July 21, 1994) (an attorney may represent the insured, his liability insurer, and the same insurer relative to underinsured motorist coverage carried by the plaintiff *if* the insurer

waives its subrogation rights against the insured and the plaintiff executes a covenant not to enforce judgment); RPC 178 (October 21, 1994) (an attorney's obligation to deliver the *file* to the client upon the termination of the representation when the attorney represents multiple clients in a single matter); RPC 207 (October 20, 1995) (an attorney may represent an insured in a bad faith action against his insurer for failure to pay a liability claim brought by a claimant who is represented by the same lawyer); RPC 209 (January 12, 1996) (provides guidelines for the disposal of closed client files); RPC 210 (April 4, 1997) (provides circumstances in which it is acceptable for an attorney to represent the buyer, the seller, and the lender in the closing of a residential real estate transaction); RPC 229 (July 26, 1996) (an attorney who jointly represented a husband and wife in the preparation and execution of estate planning documents may not prepare a codicil to the will of one spouse without the knowledge of the other spouse if the codicil will affects adversely the interests of the other spouse or each spouse agreed not to change the estate plan without informing the other spouse); RPC 251 (July 18, 1997) (an attorney may represent multiple claimants in a personal injury case, even though the available insurance proceeds are insufficient to compensate all claimants fully, *provided* each claimant, or his or her legal representative gives informed consent to the representation, and the attorney does not advocate against the interests of any client in the division of the insurance proceeds); 98 Formal Ethics Opinion 17 (January 15, 1999) (an attorney may not comply with an insurance carrier's billing requirements and guidelines if they interfere with the attorney's ability to exercise his or her independent professional judgment in the representation of the insured); 99 Formal Ethics Opinion 14 (January 21, 2000) (when an insured fails to cooperate with the defense, as required by the insurance contract, the insurance defense lawyer may follow the instructions of the insurance carrier *unless* the insured's lack of cooperation interferes with the defense *or* presenting an effective defense is *harmful* to the interests of the insured); 2003 Formal Ethics Opinion 12 (October 22, 2004) (an insurance defense attorney may give the insured and the insurance carrier an evaluation of a pending case, including settlement prospects, but may not recommend that the carrier decline to settle and go to trial if this recommendation is contrary to the wishes of the insured).

Our Supreme Court addressed the deference and weight accorded to administrative interpretations of statutes and rules adopted by agencies responsible for their enforcement and held:

[When the legislature] chooses not to amend a statutory provision that has been interpreted in a specific way, we assume that it is satisfied with [the administrative] interpretation. *Polaroid Corp. v. Offerman*, 349 N.C. 290, 303, 507 S.E.2d 284, 294 (1998), *cert. denied*, 526 U.S. 1098, 143 L. Ed. 2d 671 (1999). Nevertheless, it is ultimately the duty of courts to construe administrative statutes; [courts cannot] defer that responsibility to the agency charged with administering those statutes. *State ex rel. Utilities Commission v. Public Staff*, 309 N.C. 195, 306 S.E.2d 435 (1983).

This does not mean, however, that courts, in construing those statutes, cannot accord great weight to the administrative interpretation, especially when, as here, the agency's position has been long-standing and has been met with legislative acquiescence. *Polaroid Corp.*, 349 N.C. at 303, 507 S.E.2d at 294 (citing *State v. Emery*, 224 N.C. 581, 587, 31 S.E.2d 858, 862 (1944)); *see Frye Reg'l Med. Ctr., Inc. v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 164 (1999) (holding that the interpretation of a statute given by the agency charged with carrying it out is entitled to great weight). Moreover, according great weight to the administrative interpretation in the face of legislative acquiescence is all the more warranted when, as [in the instant case, the subject is a complex legislative scheme] . . . necessarily requiring expertise. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 129 L. Ed. 2d 405, 415 (1994).

*Wells v. Consolidated Jud'l Ret. Sys. of N.C.*, 354 N.C. 313, 319-20, 553 S.E.2d 877, 881, *reh'g denied*, 354 N.C. 580, 559 S.E.2d 553 (2001); *see also McMichael v. Proctor*, 243 N.C. 479, 485, 91 S.E.2d 231, 235 (1956) ("questions of propriety and ethics are ordinarily for the consideration of the North Carolina Bar, Inc., which is now vested with jurisdiction over such matters"); *Gardner*, 316 N.C. at 288, 341 S.E.2d at 519 ("the power to regulate the conduct of attorneys is held concurrently by the Bar and the court").

In addition, the United States Court of Appeals for the Fourth Circuit set out its and the American Bar Association's position on the attorney's duty to the insured and the insurer in *In re A.H. Robins Co., Inc.*, 880 F.2d 709 (4th Cir. 1989), *cert. denied, Anderson v. Aetna Casualty & Surety Co.*, 493 U.S. 959, 107 L. Ed. 2d 362 (1989). The Court stated:

It is universally declared that such counsel represents the insured and not the insurer. Repeated opinions issued by the American

Bar Association [ABA], as illustrated by ABA Comm. on Ethics and Professional Responsibility, Informal Opinion 1476 (1981) declare: "*When a liability insurer retains a lawyer to defend an insured, the insured is the lawyer's client.*" *See also* the following opinions in ABA/BNA Lawyers' Manual on Professional Conduct (1984): Connecticut, Informal Opinion 83-5, at 801:2059; Delaware Opinion 1981-1 at 801:2201; Michigan Opinion CI-866 at 801:4856. *See also Point Pleasant Canoe Rental v. Tinicum TP.*, 110 F.R.D. 166, 170 (E.D. Pa. 1986); *Gibson v. Western Fire Ins. Co.*, 210 Mont. 267, 682 P.2d 725, 736 (1984).

*Id.* at 751 (emphasis supplied).

The undisputed facts show plaintiff reserved its rights to indemnify defendant for any recovery from Axarlis's malicious prosecution claim, but that Patterson represented and defended defendant against all asserted claims. Plaintiff's assertion that defendant could not confidentially consult Patterson on his excess exposure liability after it reserved its rights to indemnify within the policy limits is without merit. Plaintiff failed to except to the finding of fact or demonstrate the trial court's finding and conclusion that defendant's communication to Patterson was a "confidential communication" was error. *Evans*, 142 N.C. App. at 32, 541 S.E.2d at 791.

As it relates to the specific facts and issues before us and applying the applicable abuse of discretion standard of review, I vote to overrule this assignment of error. N.C. State Bar Rule 1.8(f).

### 2. Waiver

The majority's opinion concludes defendant waived his right to assert the attorney-client privilege. I disagree.

In *In re Investigation of Death of Eric Miller*, our Supreme Court set out instances of non-confidential attorney-client communications and waiver. 357 N.C. at 328, 584 S.E.2d at 782. The Court listed four instances where the privilege is waived, including: (1) "where uncontroverted evidence showed the defendant consulted with his attorney solely to facilitate his surrender, such communication relating to the surrender was not privileged," (citing *State v. McIntosh*, 336 N.C. 517, 524, 444 S.E.2d 438, 442 (1994)); (2) "when a client alleges ineffective assistance of counsel, the client waives the attorney-client privilege as to the matters relevant to the allegation," (citing *State v. Taylor*, 327 N.C. 147, 152, 393 S.E.2d 801, 805 (1990)); (3) "communications are not privileged when made in the presence of a third person not

acting as an agent of either party," (citing *State v. Brown*, 327 N.C. 1, 21, 394 S.E.2d 434, 446 (1990)); and (4) "the privilege is not applicable when an attorney testifies regarding the testator's intent to settle a dispute over an estate," (citing *In re Will of Kemp*, 236 N.C. 680, 684, 73 S.E.2d 906, 909-10 (1953)). *Id.*; *see* N.C. State Bar Rule 1.7 (Even if a concurrent conflict of interest exists, a lawyer may represent a client if: (1) he reasonably believes he will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing.)

Here, the trial court found and concluded, "There is nothing in the Nationwide Policy which suggests that [plaintiff] providing counsel to an insured waives attorney-client privilege." This conclusion is supported by the trial court's unchallenged findings of fact that: (1) plaintiff hired Patterson to represent defendant; (2) plaintiff's concession that an attorney-client relationship was established between defendant and Patterson; and (3) the State Bar's ruling that Patterson's "primary allegiance" was to represent defendant's "best interest." RPC 92. As plaintiff failed to except to any of the trial court's findings of fact, these findings and conclusions are supported by competent evidence and applicable law. *See Okwara*, 136 N.C. App. at 591, 525 S.E.2d at 484.

## I. Sending a Letter

Plaintiff asserts, and the majority's opinion agrees, that defendant's letter to Patterson waived his right to assert the privilege because it included statements to be directed to plaintiff, a third-party. Defendant's letter to Patterson stated in part, "I have also been advised to request that you communicate to plaintiff, in no uncertain terms, that, if this matter is not settled . . . then I have every intention of pursuing any and all claims available to me against plaintiff."

While this communication, standing alone, may not be privileged, it reinforces the adverse relationship that existed between defendant and plaintiff from the beginning of Patterson's representation and is insufficient to establish a waiver of all the remaining communications contained within defendant's letter to Patterson. *See Dobias*, 240 N.C. at 684-85, 83 S.E.2d at 788. Plaintiff has not carried its burden to show that defendant waived privileged communications to Patterson under

either of the four factors set out in *In re Investigation of Death of Eric Miller*. 357 N.C. at 328, 584 S.E.2d at 782.

### ii.  Asserting Counterclaims

The majority's opinion also holds "[t]o the extent defendant contends that Patterson negligently defended him in the underlying action and negligently failed to resolve the claim, such allegations constitute a waiver of the attorney-client privilege." Defendant argues in his brief, "[t]he disclosures at issue here have absolutely nothing to do with the issues remaining in the lawsuit and clearly are not necessary to the defense of [] Patterson's conduct even if it were at issue."

At bar, defendant: (1) made no allegations regarding any misconduct by Patterson; (2) has not asserted any claims against Patterson; and (3) made no adverse allegations against Patterson or even mentioned his name in the counterclaims. During the hearing, defense counsel conceded that the statute of limitations for defendant to assert claims against Patterson had expired. Defendant's counterclaim asserts failure to settle and breach of duty *only* on the part of plaintiff.

While *some* communications defendant made to Patterson may be discoverable and disclosed, defendant has not waived his right to assert the privilege until he asserts claims against Patterson's estate. Even then, defendant would not waive his privilege to all their communications. *See State v. Buckner*, 351 N.C. 401, 407, 527 S.E.2d 307, 311 (2000) (Holding the defendant, by asserting a claim for ineffective assistance of counsel, waived his right to the attorney-client privilege *only* as to matters relating to the allegations.).

Being bound by the trial court's unchallenged findings of fact and the record before us, plaintiff has failed to show and I would hold the trial court did not abuse its discretion in finding and concluding the existence of the attorney-client privilege. I would also hold that such privilege protects communications between defendant and Patterson during his representation of defendant in the underlying action and defendant did not waive his privilege. I vote to overrule this assignment of error.

### III.  Possession of Patterson's File by Plaintiff

Plaintiff argues the trial court erred in ordering Patterson's file and all copies of the documents contained therein to be sealed pending further orders. In his cross assignments of error numbers three

and four, defendant asserts the trial court erred by not finding: (1) it was inappropriate for Patterson or his counsel to make the file or any of its contents known to plaintiff, concluding that it was not appropriate for Patterson to turn over his file to defendant; and (2) plaintiff's attorney had a conflict of interest in representing Patterson, while at the same time representing plaintiff.

During the trial court's oral rendition of its judgment, it ordered, "[plaintiff's counsel] seal [the file] and provide it to the Court to be kept in the Court file sealed, and unsealed only by order at the appropriate time." Plaintiff's counsel responded, "I can just keep them in my office and not make them available." The trial court agreed to counsel's offer and stated, "I just want an affidavit from you sworn under oath that those matters are sealed and are available in your office. You can even put that in an envelope and seal it."

Defense counsel requested, "with respect to the sealed documents in [plaintiff's counsel's] office, there may be portions of that file that were communicated to the client, that need to be somehow retrieved from the client, his client, plaintiff." Plaintiff's counsel responded, "I'd ask that we let that abide until such time as this appeal's decided." The trial court responded, "You're going to have to call plaintiff and tell them what happened here. When you call them, would you please ask them to kindly . . . put it under seal until the appeal, somewhere." .

Subsequently in its written order, the trial court stated in decreetal paragraph number three, "Defendant's counsel is directed to maintain his copy of Lee A. Patterson's file from the Civil Action under seal in his offices and not to provide the contents of that file to other persons pending further orders of the Court." Complicating this matter is Patterson, who would normally seal and hold the file pending further discovery orders, is deceased, and plaintiff's counsel represents Patterson's estate. During the hearing, plaintiff's counsel represented to the trial court, "I'm still the lawyer for [Patterson]'s estate."

The parties do not dispute that defendant was entitled to a copy of his entire file. Plaintiff's counsel stated at the hearing, "it's my opinion [Patterson]'s got an obligation to go ahead and give [defendant] a copy of the file." Plaintiff's counsel sought advice from the State Bar whether defendant was entitled to a copy of his file and was advised, under RPC 153, he was entitled to his file. Defendant's file was made available for him to pick up at Patterson's office and was delivered to defendant and his current counsel in October 2001.

In light of the issues previously discussed and the present circumstances of this case, I vote the trial court's conclusion of law number nine stating, "It was not appropriate for Lee A. Patterson, II, to turn over his file regarding the Civil Action to Defendant," should be reversed. I vote to vacate paragraph number three in the decreetal portion of the order. The trial court's order requiring plaintiff's counsel to seal Patterson's file and all copies made therefrom should be affirmed. Plaintiff's counsel should deliver the file to the trial judge to be maintained pending further discovery motions by either party. Upon further motions by either party, the presiding judge should conduct an *in camera* review and enter appropriate findings of fact supporting its conclusions of law.

## IV. Summary

The United States Supreme Court and our Supreme Court has recognized that "the attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403, 141 L. Ed. 2d 379, 384 (1998). " 'Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.' " *Evans*, 142 N.C. App. at 32, 541 S.E.2d at 790 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 66 L. Ed. 2d 584, 591 (1981)).

Plaintiff's and defendant's interests on coverage and indemnity of Axarlis's malicious prosecution and abuse of process claims were initially in conflict and remained adverse throughout the underlying action and the present action. *Gardner*, 316 N.C. at 288, 341 S.E.2d at 519. Based on a careful review of the record and the limited facts and issues presently before this Court, plaintiff: (1) failed to assign error to any of the trial court's findings of fact that are deemed to be supported by substantial evidence and are binding on appeal; (2) concedes or fails to argue any authority to reverse the trial court's conclusion of law that an attorney-client privilege existed between Patterson and defendant and that Patterson breached the attorney-client relationship by delivering defendant's file to plaintiff without defendant's consent; and (3) failed to show any abuse of discretion in the trial court's denial of plaintiff's motions to compel discovery or for sanctions and that the trial court's rulings are "manifestly unsupported by reason," *Clark*, 146 N.C. App. at 228, 552 S.E.2d at 245, or "could not be the product of a reasoned decision," *Chavis*, 155 N.C. App. at 772, 573 S.E.2d at 921 (citation omitted).

**NATIONWIDE MUT. FIRE INS. CO. v. BOURLON**

[172 N.C. App. 595 (2005)]

Plaintiff failed to show the trial court abused its discretion not allowing disclosure of privileged material under their discovery motion.

## V. Conclusion

Inherent tensions arise where an attorney has an established and continuing business relationship with an insurer and represents the insured as a onetime event. While multiparty representation can be described as "tiptoeing on a tightrope," all attorneys are bound to exercise independent professional judgment on behalf of all clients. An attorney who recognizes a divided loyalty between clients or who represents joint clients whose interests are or become adverse, must disclose that fact, advise each to obtain separate counsel, and constantly be vigilant and protective of each client's interests without harming the other client. RPC 92.

Where representation of multiple clients reveals conflicts, the attorney should, and must give, "appropriate advice to the insured with regard to the employment of independent counsel whenever the attorney cannot fully represent his or her interest." *Id.* Nothing in the record shows Patterson told defendant he could not fully represent his interests or that he recommended the employment of independent counsel. To the contrary, the facts show and plaintiff concedes Patterson represented defendant on *all* claims throughout the underlying action, including filing of post-trial motions.

Plaintiff's duty to zealously defend its insured is not based on grace or gratuity, but rather in fulfillment of a bargained-for and compensated contractual duty contained within its policy with the insured. Here, plaintiff launched a preemptive action in seeking a declaratory judgment of its duty to indemnify the insured and coopted the attorney it hired to defend its insured's "best interests" to hand over the client's entire file to them. The trial judge correctly stated during the hearing, "the attorney should have advised the parties to consider employing separate counsel."

While Lord Chesterfield's adage that "he who pays the piper calls the tune" (Letter from Lord Chesterfield to his son, of 1792) may be acceptable in other relationships, it control and directly contrary to the attorney-client relationship. N.C. State Bar Rule 1.8(f).

The potential of an inherent conflict of interest arises where an attorney accepts representation of a client and accepts compensation for such representation from another. However, this is a conscious

choice by the attorney, and it is the attorney's conduct we, in our inherent authority, and the State Bar regulate. North Carolina State Bar Rules, Subchapter 1B (2005).

The ancient axiom of "no one can serve two masters: for either he will hate the one and love the other or else he will be loyal to the one and despise the other" represents an universal truth. Matthew 6:24 (New King James). Our and the State Bar's role is to promote and protect the essential core of the primary of the attorney's obligation to the client. Since plaintiff's contractual duty is to indemnify and to defend its insured, its contractual duty does not equate to and cannot arise to equal status with its insured where their interests are adverse.

While I recognize North Carolina's "dual representation" of the insured and the insurer by one attorney, dual representation does not include a right of the insurer to privileged communications between the insured and his attorney. RPC 92. Where the interests of the insured and the insurer on indemnity are adverse, the insurer cannot assert the attorney-client privilege against its insured. *Id.*

I vote to affirm the trial court's order except for conclusion of law number nine and the decreetal paragraph number three that allows plaintiff's counsel to retain possession of Patterson's sealed file. This file should remain sealed and should be delivered to and deposited with the presiding judge on remand. An affidavit should be prepared under oath that all documents in the file originally delivered to plaintiff, along with all copies of documents made therefrom after delivery, are contained therein. I vote to affirm in part, reverse and vacate in part and remand. I concur in part and respectfully dissent in part from the majority's opinion as discussed above.