**POINT PLEASANT CANOE RENTAL, INC., et al, Plaintiffs,**

v.

**TINICUM TOWNSHIP, et al., Defendants,**

**Citizens For Open Government and Ron Strauss, Proposed Intervenors.**

**Civ. A. No. 84–4504.**

United States District Court, E.D. Pennsylvania.

May 2, 1986.

Thomas J. Elliott, Louis B. Kupperman, Philadelphia, Pa., for plaintiffs.

Thomas C. Zielinski, Philadelphia, Pa., for Tinicum Tp.

Robert J. Sugarman, Philadelphia, Pa., for Citizens For Open Government and Ron Strauss.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this civil rights action against a township and several of its citizens, officers, and supervisors, I am called upon to decide whether a citizens' organization may intervene as a defendant pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. Because I find that the petition is untimely, I will not allow intervention.

Point Pleasant Canoe Rental and Sales (Point Pleasant Canoe) operates a water-recreation business along the Delaware River in Tinicum Township, Pennsylvania. As part of its operations, Point Pleasant Canoe rents canoes, kayaks, rubber tubes and other devices to allow customers to float down the river. On September 19,

1984, Point Pleasant Canoe and its president, Thomas W. McBrien, Jr., filed suit against Tinicum Township, the township board of supervisors, township zoning officer, and certain citizens. Plaintiffs' complaint alleges that defendants engaged in a conspiracy to cripple plaintiffs' business operations in an effort to deter the potential attraction of Point Pleasant Canoe customers. Plaintiffs allege that defendants have initiated harassing zoning inspections, have threatened Point Pleasant Canoe employees and McBrien's children, have issued defamatory statements regarding plaintiffs, have caused the township police to single out plaintiffs for minor traffic violations, have unlawfully frustrated plaintiffs from developing their business outside the township, and have imposed arbitrary, unreasonable, and punitive conditions on plaintiffs' development applications. Plaintiffs claim violations of the fifth and fourteenth amendments to the United States Constitution and breaches of state tort law. Plaintiffs assert the right to a federal remedy under 42 U.S.C. § 1983.

After the complaint was filed, the defendants counterclaimed and the township moved the court to abstain. After the abstention motion was denied, the parties vigorously pursued discovery. During at least one four to six week period, for example, counsel devoted a full two days per week to taking depositions. In late summer, 1985, the court became aware that the parties were attempting to reach a global settlement, and a hearing was scheduled for August 29, 1985, to allow the parties to present a settlement agreement for my approval.

Two days before the hearing, the present petitioners, the Citizens for Open Government and Ron Strauss (collectively "COG"), filed a petition to intervene. The thrust of the petition is that the proposed settlement was reached without proper notice to township citizens, calls for action by the township that would diminish the value of petitioners' real estate through an invalid exercise of the public trust, and deprives them of property without due process of law. Petitioners wish to defend the main action against the township and assert a cross-claim under section 1983 against the township and its officers.

■ In order to intervene as of right under Fed.R.Civ.P. 24(a)(2), a petitioning party must satisfy three criteria.

[F]irst, that they had a sufficient interest in the matter, and that their interest would be affected by the disposition; second, that their interest was not adequately represented by the existing parties; and third, that their application was timely.

*Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 504, (3d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). Plaintiffs and the township defendants assert that petitioners have failed to satisfy any of these criteria. Because the only basis that could possibly support a claim of inadequate representation was known to petitioners at the outset of the litigation, I find petitioners' application untimely and therefore need not consider whether they had an interest in the matter which would be affected by the outcome.

■ Although the burden of establishing inadequate representation should be treated as minimal, *Rizzo*, 530 F.2d at 505 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972)), that burden remains on the proposed intervenor. *Id.* Representation is generally considered adequate if no collusion is shown between the representative and the opposing party, if the representative does not represent an interest that is adverse to the proposed intervenor, and if the representative has been diligent in prosecuting the litigation. *Delaware Valley Citizens' Council v. Commonwealth of Pennsylvania*, 674 F.2d 970, 973 (3d Cir.1982). A party charged by law with representing the interest of the absent party—such as a municipality or a state with respect to its citizens—is presumed to provide adequate representation. *See id.* at 973; *Rizzo*, 530 F.2d at 505; *Arvida v. City of Boca Raton*, 59 F.R.D. 316, 323 (S.D.Fla.1973); 7A C.

Wright & A. Miller, *Federal Practice and Procedure* § 1909, at 528–29 (1972).

In this case, petitioners assert that they can rebut the presumption and show that they are inadequately represented because they contend that the public defendants, represented by counsel provided by an insurance company, have colluded with plaintiffs to settle the case in order to avoid personal liability or excessive money damages, but without regard to the adverse impact a settlement would have on township residents. In order to address this argument, I must divide it into separate components: allegations of collusion; representation by counsel provided by the township's insurer; and avoidance of personal liability.

■ Collusion has been defined to mean the following: "An agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law. It implies the existence of fraud of some kind, the employment of fraudulent means, or of lawful means for the accomplishment of an unlawful purpose. A secret combination, conspiracy or concert of action between two or more persons for fraudulent or deceitful purpose." *Black's Law Dictionary* 240 (5th ed. 1979). There is no question that if petitioners had shown actual collusion between plaintiffs and defendants they would have established that they are not adequately represented. However, petitioners failed to raise even a strong inference of collusion. Stated simply, petitioners have not shown that defendants sought to accomplish an improper purpose, perpetrated a fraud, or acted secretively.

During an evidentiary hearing, petitioners attempted to suggest that the proposed settlement required the township to adopt an amendment to its zoning ordinance which would permit plaintiffs to operate their water-recreation business in the area zoned "RC," an area where plaintiffs are presently not permitted to operate. Petitioners claim that such a procedure to amend the zoning ordinance is improper

and therefore forms a basis for a collusion allegation.

■ Petitioners point to three pieces of evidence in support of this allegation. First, they rely heavily on the fact that drafts of the settlement agreement and a proposed zoning amendment were sent under cover of a single letter from the township solicitor, which read in part, "After months of negotiation, these documents represent the best attempt to resolve the law suits and related matters." In a similar vein, petitioners point to the fact that the settlement agreement and proposed zoning amendment were discussed together at two public meetings of the township supervisors. Finally, petitioners assert that certain features of the zoning amendment appear tailored to the specific needs of the plaintiffs.

COG argues that, taken together, the evidence demonstrates that both the settlement agreement and proposed zoning amendment had to be approved as a condition of settlement. This argument ignores the fact that although the settlement agreement makes reference to zoning permits and approval, the agreement in no way binds the township to amend the current zoning ordinance. Petitioners attempt to trivialize the absence of such a binding provision by suggesting that its invisibility is simply an attempt to avoid a later contract-zoning challenge to the zoning amendment. I reject this argument as petitioners have failed to explain what motive the supervisors could possibly have to do more for their once-bitter adversaries than the settlement agreement requires.

The testimony of the witnesses subpoenaed by petitioners undermined rather than supported petitioner's contentions. Township Solicitor Samuel Moyer testified that when he assumed the duties as solicitor, he believed the township zoning ordinance was subject to challenge for failing to provide for water-recreation use. He also testified that McBrien was not alone in his desire to use the river for those purposes. Moyer testified that his objective in negotiating a settlement and drafting a proposed zoning

amendment was to place a limit on McBrien's activities since McBrien could otherwise expand his present activities as a prior non-conforming use, and to attempt reasonably to cure the vulnerability of the present zoning amendment.

Township Supervisor Sophie Halla testified that she did not know whether the settlement agreement contemplated enactment of the ordinance, but recognized that before any such ordinance could be passed it would have to be considered by the township planning commission and the Board of Supervisors after public hearings. Another supervisor, Frank Lewis, testified that he was never told that the board would have to pass an ordinance as a condition of settlement. He emphasized that the solicitor had observed that the township was vulnerable to attack in the river-recreation context and that some form of amendment had to be passed to cure that vulnerability.

Reviewing all the evidence, it is clear that petitioners have failed to show an improper purpose. It was natural for the township to consider amending the zoning ordinance and settling this action at the same time—this action simply precipitated township response to a perceived problem in the zoning ordinance that had existed for some time.

I also cannot find that the township or its supervisors acted fraudulently or secretively. It appears true that much of the negotiation of this settlement was conducted out of the public eye. However, intense negotiations such as those which were necessary here must proceed with a limited number of actors. Once it was feasible for the supervisors to make the terms of the proposed settlement public, there were two public hearings held to explain and discuss the merits and terms of the agreement.

In the last analysis, it appears that petitioners equate the decision to settle with collusion. However, in this regard the Third Circuit has followed the lead of the Seventh Circuit in saying, "[A] consent decree may be simply 'the inescapable legal consequence of application of fundamental law to the facts. That [intervenors] would

have been less prone to agree to the facts and would have taken a different view of the applicable law does not mean that [defendants] did not adequately represent their interests in the litigation.'" *Rizzo*, 530 F.2d at 505 (quoting *United States v. Board of School Commissioners*, 466 F.2d 573, 575 (7th Cir.1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973)).

Intervenors also assert that their interests are not adequately represented by the township because counsel for the township was selected and provided by an insurance company. They argue that counsel will be more interested in minimizing the financial exposure of the insurance company than in representing the true interests of the township and its citizens.

When a liability insurer retains a lawyer to defend an insured, the insured is considered the lawyer's client. *See* ABA Comm. on Ethics and Professional Responsibility, Informal op. 1476 (1981), *reprinted in* P. Allen, L. Occhino, R. Robins & R. Wells, *ABA/BNA Lawyers' Manual on Professional Responsibility* 801:326 (1986). When conflicts-of-interest arise between an insurance carrier and its insured, the lawyer representing the insured must act exclusively on behalf of, and in the best interests of the insured. *See* Connecticut Bar Ass'n Comm. on Ethics and Professional Responsibility, Informal op. 83–5 (1982), *reprinted in* P. Allen, L. Occhino, R. Robins & R. Wells, *supra*, at 801:2059. "Lawyers retained by an insurance company to represent insureds must be zealous advocates for the appointed clients, even though such representation would work to the detriment of the insurance company." New Hampshire Bar Ass'n Ethics Comm., Informal op. 1982–3/2 (1982), *reprinted in* P. Allen, L. Occhino, R. Robins & R. Wells, *supra*, at 801:5703. *See also Model Code of Professional Responsibility*, EC 5–23 (recognizing that a lawyer hired by a third person to represent a client should exercise judgment on behalf of the client, independent from the interests of the third person).

Intervenors have pointed to nothing that would suggest that the township's attorney subordinated his ethical obligation to his client to some sense of duty owing to the insurance carrier. Therefore, petitioners are asking me to announce a per se rule that counsel provided to an insured by an insurance company is likely to disregard his ethical duty to his client. I do not believe that such an obligation should be treated even nearly as lightly as intervenors suggest, I am unwilling to adopt such a per se rule, and I therefore reject this ground as a basis of establishing inadequate representation.

Finally, petitioners assert that because individual supervisors are exposed to personal liability based on the allegations in the complaint, there is a potential for them to settle the case in disregard of the interest of the township in order to minimize personal liability. Such an argument is not without support. *See, e.g., Planned Parenthood v. Citizens for Community Action,* 558 F.2d 861 (8th Cir.1977) (in an action against a city and city officials challenging a six-month moratorium on construction of abortion facilities, citizens were inadequately represented and permitted to intervene, *inter alia,* because the individual defendants may have a desire to avoid personal liability that could cause them to compromise citizen's interests).

However, the fact that plaintiffs were seeking to impose personal liability on the township officials was known from the filing of the complaint, thus raising questions as to the timeliness of the petition. In analyzing whether an intervention petition is timely, the Third Circuit has instructed that a court should take all the circumstances into account and focus on 1) the stage to which the proceedings have progressed when intervention was sought, 2) the prejudice resultant delay might cause to other parties, and 3) the reason for the delay. *See Rizzo,* 530 F.2d at 506 (quoting *NAACP v. New York,* 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973); *Nevilles v. EEOC,* 511 F.2d 303, 305 (8th Cir.1975)). The Fifth Circuit has added that the district court should consider the extent of prejudice the petitioner would suffer if his petition were denied and the existence of any unusual circumstances. *Stallworth v. Monsanto,* 558 F.2d 257, 264–66 (5th Cir.1977).

In reviewing the circumstances in this case, it is clear that COG's petition is untimely. When COG petitioned to intervene the parties were engaged in serious settlement negotiations and had completed nearly a year of extensive discovery. To allow COG to intervene at this stage would result in severe prejudice to the rights of plaintiffs, the township, several of its supervisors, and other individual defendants. From a purely practical point, it would seem that much of the discovery that had taken place would have to . be repeated. More important, as long as this action remains open, the ability of plaintiffs to operate their water-recreation business in the township will be subject to question, and a chilling effect will be cast upon the efforts of the township to scrutinize their present zoning ordinance and amend that ordinance if necessary. Finally, the township suffers extreme prejudice if, after exhaustive discovery and settlement negotiations, the fruits of that process can be brushed aside by dissatisfied citizens who knew of their basis for charging inadequate representation with the filing of the complaint but waited until the eve of settlement to assert their belief that they could strike a better deal or present a more compelling defense.

Petitioners have offered no suitable explanation as to why they waited almost a full year to petition to intervene. They, of course, argue that it was only shortly after they learned of the collusion between plaintiffs and defendants that their petition to intervene was filed. However, petitioners have failed to demonstrate collusion and accordingly cannot justify their delay on that basis. For a similar lack of substantiation, I reject COG's contention that they were misled as to the township's intentions to defend or settle the action. What has been demonstrated is petitioner's dissatisfaction with the decision to settle, the terms of the settlement agreement, and the

terms of a proposed zoning amendment. As has been stated earlier, however, the decision to settle is itself insufficient to demonstrate the absence of an adequate representative and similarly provides no explanation for the nearly one-year delay in petitioning.

Finally, the prejudice that COG will suffer as a result of its inability to defend and assert a cross-claim is minimal. Petitioners' identify the harmful consequences that would flow from the denial of their petition. They argue that if the proposed settlement agreement is approved, they will be unable to prevent "the unwarranted expansion of plaintiffs' business." To the extent COG complains about the terms of the proposed zoning amendment, I must again stress that it has not been shown to be a condition of settlement and the terms of resolution of this action will have no effect on the Board of Supervisors' consideration of the amendment. Interestingly enough, COG's own witness, Florence Louden, a member of the Township Planning Commission, testified that the commission, which concededly is only an advisory body, has not even considered the proposal in question here and instead has been developing its own proposal.

To the extent petitioners complain about what they have characterized as an overly-permissive limitation in the settlement agreement on the number of customers Point Pleasant Canoe may accomodate each day, they have failed to rebut Samuel Moyer's statement that the figure was an approximation of the present service at Point Pleasant Canoe. Petitioners attempt to attack this characterization by asserting that the 3500 customer per-day figure is far in excess of the number of flotation devices Point Pleasant Canoe admitted to having in another judicial proceeding. I reject this attempt as I do not find the number of flotation devices involved to be inconsistent with the limitation in the settlement agree-

ment or the number of customers plaintiff may serve per day.

In the last analysis, petitioners will suffer little prejudice from being unable to participate in this action. They have not shown that the terms of the settlement agreement will cause the unwarranted expansion of plaintiffs' business or deprive them of their ability to contest a proposed zoning amendment. To the extent they believe a conspiracy existed between plaintiffs and defendants, they are not foreclosed from starting a separate action.[1]

Accordingly, petitioners' motion to intervene will be denied.

---

1. It is important to stress that the findings made in this memorandum are made for purposes of this petition only.