**Eckman v. Erie Insurance Exchange**

C.P. of Montgomery County, no. 09-36724.

*Steven H. Lupin,* for plaintiff.
*Jane M. Goode,* for defendant.

ALBRIGHT, *J.,* August 6, 2010—The plaintiffs, Colleen Eckman and Glenn Eckman appeal from this court's order, dated January 20, 2010, denying the plaintiffs' motion for preliminary injunction. For the reasons that follow, the undersigned believes that the order should be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises out of an insurance coverage dispute in which the insured plaintiffs, Mr. and Mrs. Eckman, claim that a conflict of interest exists for the attorney selected by their insurer, Erie Insurance Exchange, to defend Ms. Eckman in an underlying tort action, and, therefore, the Eckmans should be entitled to select, and have Erie pay for, independent counsel to defend Mrs. Eckman in that action.

By way of background, on or about June 19, 2009, Colleen Eckman was served with a complaint, in which she was named as a defendant in the case of *Solid Waste Services Inc. d/b/a J.P. Mascaro & Sons v. Eckman,* filed in the Montgomery County Court of Common Pleas, no. 09-18231 ("Massaro litigation"). The complaint purports to set forth a cause of action against Colleen Eckman for "defamation (libel per se)," asserting essentially that Ms. Eckman, during her republican primary election campaign for Lower Providence Township Supervisor in 2009, made certain defamatory statements for which she should be held accountable and assessed with compensatory and punitive damages. (Massaro litigation compl. at 2.) Specifically, and, perhaps, in more pertinent part,

the Massaro complaint claims that Colleen Eckman "willfully, maliciously and falsely" accused J.P. Massaro of making contributions, in violation of the Pennsylvania Election Code, to the campaigns of Mrs. Eckman's opponents in a "last minute smear campaign mailer." (Massaro litigation compl. at 2-3.)

At the time that Ms. Eckman was alleged to have uttered the statements complained of, she and her husband were the insured beneficiaries of policy no. Q512508036A, which provided, in pertinent part, the following:[1]

"Home And Family Liability Protection—Section II

"Personal liability coverage includes bodily injury liability coverage, property damage and personal injury liability coverage

"Personal Injury Liability Coverage our promise

"We will pay all sums up to the amount shown on the declarations which anyone we protect becomes legally obligated to pay as damages because of personal injury caused by an offense committed during the policy period.

"We will pay for only personal injury covered by this policy

"We may investigate or settle any claim or suit for damages against anyone we protect, at our expense. If anyone we protect is sued for damages because of personal injury covered by this policy, we will provide a defense with a lawyer we choose, even if the allegations are not true. We are not obligated to pay to any claim or

---

1. Pls.' compl. at exhibit A (policy at 4-5, 14-16).

judgment or defend any suit if we have already used up the amount of insurance by paying a judgment or settlement. . . .

"What We Do Not Cover—Exclusions

"Bodily injury liability coverage

"Property damage liability coverage

"Personal injury liability coverage

"Medical payments to others coverage

"We do not cover under bodily injury liability coverage, property damage liability coverage, personal injury liability coverage and medical payments to others coverage:

"(1) Bodily injury, property damage or personal injury expected or intended by anyone we protect even if:

"(a) the degree, kind or quality of the injury or damage is different than what was expected or intended; or

"(b) a different person, entity, real or personal property sustained the injury or damage than was expected or intended.

"We do cover reasonable acts committed to protect persons and property . . .

"(12) Punitive or exemplary damages and related defense costs. . . .

"We do not cover under bodily injury liability coverage, property damage liability coverage or personal injury liability coverage: . . .

"(9) Personal injury arising out of willful violation of a law or ordinance by anyone we protect. . . .

"(11) Suits for libel, slander or defamation of character made against anyone we protect if the publication or statement:

"(a) took place before the effective date of this insurance; or

"(b) was knowingly untrue. . . .

"Definitions

" 'personal injury' means injury arising out of:

"(1) libel, slander or defamation of character;

"(2) false arrest, wrongful detention or imprisonment, malicious prosecution, racial or religious discrimination, wrongful entry or eviction, invasion of privacy, or humiliation caused by any of these."

Upon receipt of the Mascaro complaint, and pursuant to the provisions of the policy, Colleen Eckman promptly forwarded a copy of the complaint to Erie, which, on June 30, 2009, issued a reservation of rights letter,[2] in which it reserved its right to provide coverage for the claims alleged in the Mascaro complaint because "(1) intentional acts are not covered; and (2) punitive or exemplary damages are also not covered by the policy." Subject to its reservation of rights letter, Erie agreed to investigate the claims made in the Mascaro litigation. However, due to their concerns that Erie's representation of Ms. Eckman might be hindered, if not compromised, by what they perceived to be Erie's conflict of interest in undertaking her defense, Mr. and Mrs. Eckman sought out the advice and private representation of the law firm

---

2. Pls.' compl. at exhibit C (Vora, "reservation of rights letter," 6/30/09).

of Hamburg, Rubin, Mullin, Maxwell & Lupin (HRMM&L). By letter, dated July 6, 2009,[3] addressed to Commercial Liability Claims Specialist Sushma K. Vora, Steven H. Lupin Esquire, a partner at HRMM&L, informed Erie of his firm's representation of the Eckmans, requesting that, on behalf of their clients, they be permitted to defend Mrs. Eckman in the Mascaro litigation "as her independent counsel with legal service paid for by Erie." The basis of Mr. Lupin's and his clients' request centered upon Erie's agreement to defend Ms. Eckman, subject to its right to "assert non-coverage at a later date" should its insured's conduct subsequently be found or determined to be excluded from the coverage provided by the policy. Mr. Lupin asserted that the potential for such a scenario created a conflict of interest for any attorney selected and hired by Erie to represent Ms. Eckman, ostensibly due to the resultant divergence of interest of the insured and insurer brought about by the insurer's reservation of rights letter.[4] In her August 12 response to Mr. Lupin, Ms. Vora reiterated and confirmed Erie's selection of the law firm of McCormick & Priore to represent Ms. Eckman "under a reservation of rights," discounting any responsibility for "legal fees" incurred through or as a result of her hiring of private counsel to represent her in the underlying litigation.[5]

Erie's rejection of the Eckmans' request that it fund the expense of the hiring of their privately retained counsel to represent Colleen Eckman in the Mascaro litigation

---

3. Pls.' compl. at exhibit D (Lupin and Cornish ltr., 7/6/09).

4. Pls.' compl. at exhibit C (Vora, "reservation of rights letter," 6/30/09).

5. Pls.' compl. at exhibit F (Vora ltr., 8/12/09).

apparently precipitated Mr. and Mrs. Eckmans' subsequent filing against its insurer on November 12, 2009 of both a complaint for declaratory judgment and a motion for preliminary injunction. The relief sought in each case was the trial court's declaration and order that the defendant respondent Erie be required to immediately provide Colleen Eckman with independent counsel of Ms. Eckman's choice, at Erie's expense, to represent her in the defense of the Mascaro litigation.

Thereafter, following a hearing and argument held before the undersigned, the trial court, by order dated January 20, 2010, denied the Eckman's motion for preliminary injunction, finding that:

"The plaintiffs have failed to establish each of the prerequisites needed to secure the granting of the extraordinary preliminary injunctive relief which they have requested.

"Furthermore, there has been no evidence produced which might warrant a finding that an actual conflict exists for the attorney chosen by the defendant insurer to represent the plaintiff, Colleen Eckman, in her defense of the underlying defamation action . . . . Nor, for that matter, does Pennsylvania law support the plaintiffs' contention that, in a case such as this, a conflict automatically arises when the insurer, under the policy of insurance issued to the plaintiffs, invokes a reservation of rights clause as to the limited coverages afforded the insured. Indeed, the insurer does not breach any duty to the insured by simply providing a defense to its insured under a reservation of rights where specific coverages are either unavailable and/or denied. Rather, whenever such a situation arises where the insurance company and

its insured are represented by the same attorney, Pennsylvania jurisprudence appears to have consistently resolved any claims of conflict, other than those which are proven to actually exist, by holding that the lawyer involved is professionally and ethically bound to act exclusively on behalf of and in the best interests of the insured, to whom is owed first and foremost a duty of uncompromised loyalty. (Tr. ct. order, 1/20/10.)

The filing of Mr. and Mrs. Eckman's appeal from the order of January 20 was followed by the plaintiffs' timely submission of their concise statement of errors complained of on appeal (1925(h) statement), which queried:

"(1) Whether this court committed abuse of discretion or error of law when it held that plaintiffs failed to establish each of the prerequisites needed to obtain preliminary injunctive relief?

"(2) Whether this court committed abuse of discretion or error of law when it held that a conflict of interest did not exist for any attorney selected and paid for by Erie Insurance to defend Colleen Eckman in the case of *Solid Waste Services, Inc. d/b/a/ J.P. Mascaro & Sons v. Eckman* (Mascaro litigation), Montgomery County, Pennsylvania Court of Common Pleas no. 09-18231, based upon the facts that Colleen Eckman has been sued for intentional conduct and punitive damages, neither of which are covered by the insurance policy under which Erie Insurance is defending Colleen Eckman [sic] the Mascaro litigation, and because any attorney selected by Erie Insurance has inherent and concurrent responsibilities to Erie as a third-party payor and to Colleen Eckman as a client?"

64

## DISCUSSION

Generally, preliminary injunctions are granted sparingly and deemed appropriate only in exceptional circumstances where the rights of the parties are clear. *Jostan Aluminum Products Co. Inc. v. Mount Carmel District Industrial Fund,* 256 Pa. Super. 353, 358, 389 A.2d 1160, 1163 (1978). Trial courts have reasonable grounds to deny preliminary injunctive relief when at least one of the necessary elements is not established. *Summit Towne Centre Inc. v. Shoe Show of Rocky Mount Inc.,* 573 Pa. 637, 646, 828 A.2d 995, 1001 (2003). And, once appealed, a review of the trial court's denial of a preliminary injunction is confined, for the most part, to an abuse of discretion standard and a determination of whether the record presents "any apparently reasonable grounds" to support the trial court's holding. *Id.* at 1001. Only when the record does not support the trial court's denial or the rule of law applied was "palpably erroneous," will an appellate court interfere with the trial court's decision. *Id.* at 1000-1001.

A trial court properly denies a request for preliminary injunctive relief where the movant has not established all of the following "essential prerequisites":

(1) The movant's right to relief is clear;

(2) The injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages,

(3) Greater injury would result from refusing the injunction than from granting it; and the injunction will not substantially harm other interested parties in the proceedings;

(4) The injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

(5) The injunction is reasonably suited to abate the offending activity; and,

(6) The injunction will not adversely affect the public interest. *Summit Towne Centre Inc.,* 828 A.2d at 1001.

It is important to realize at the outset that the purpose of the hearing before the undersigned was to address and resolve the plaintiffs' "request for injunctive relief." The burden of establishing one's right to an injunctive remedy falls heavily upon the petitioners as they are required to satisfy each of the aforementioned essential prerequisites. *Id.* However, even though critical of the trial court's finding that they failed to establish or prove each of those prerequisites, the plaintiffs have chosen not to identify in their statement of errors complained of on appeal which, if any, of the missing essential criteria they claimed to have satisfied in this case, which, if present, might otherwise entitle them to injunctive relief.

*The Plaintiffs Failed To Establish the Requisite Criteria for Injunctive Relief*

The plaintiffs contend that the trial court erred when it determined that the plaintiffs had not met the criteria necessary to secure injunctive relief. However, it is readily apparent from their motion, a review of the hearing transcript and the plaintiffs' memorandum of law submitted in this case, that little attempt was made by them to satisfy the burden imposed upon them to identify and demonstrate the applicability of each of the six "essential prerequisites" necessary for injunctive relief. Com-

pletely missing from the proof required in this matter, are any factual or legal bases to justify the trial court's departure from well and long established precedent in the Commonwealth of Pennsylvania. The plaintiffs' attempt to shoulder its burden in this matter, with little more than a cursory reference to only two of the six criteria discussed above, *i.e.,* that their right to relief is clear and their claim of irreparable harm should injunctive relief not be afforded them, fell far short of that which the law requires of them. (N.T. 12/3/09, at 60, 63.)[6] Nor was the plaintiffs' resort to non-binding, non-precedential citation of decisional case law from jurisdictions outside the Commonwealth either persuasive or revealing of any actual sustainable conflict, either factually based or extant as a matter of law, in the relationship between the plaintiffs and the attorneys who were chosen by Erie to represent them.[7]

The courts in Pennsylvania have consistently held that "when a liability insurer retains a lawyer to defend an insured, the insured is considered the lawyer's client." *Point Pleasant Canoe Rental Inc. v. Tinicum Twp.,* 110 F.R.D. 166, 170 (E.D. Pa. 1986). Once engaged in an attorney-client relationship with the insurer's insured,

---

6. The plaintiffs apparently claim that their right to relief is clear based on their assertion that retained defense counsel has a conflict of interest in representing the insured and that representation creates irreparable harm. They further contend that such a conflict necessarily obligates Erie to cover the cost of independently retained defense counsel for Ms. Eckman.

7. See *e.g., San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,* 162 Cal. App.3d 358 (1984); *Nandorf v. CNA Ins. Companies,* 479 N.E.2d 988 (Ill. App. 1st Dist. 1985); *Parker v. Agric. Ins. Co.,* 440 N.Y.S.2d 964 (N.Y. Sup. 1981).

the lawyer is ethically bound to advocate exclusively on behalf of the insured client, regardless of who hires him or her or pays for the costs of the insured's representation and irrespective of any perceived conflicting interests. *Id.*

At the hearing and during the argument presented in support of the plaintiffs' motion for preliminary injunction, counsel for the plaintiffs conceded that the current state of the law in Pennsylvania does not support his clients' contention that Ms. Eckman is entitled to select her own defense counsel at Erie's expense; rather, he acknowledged readily that it was his intention to convince the trial court to "decide and make new law that has not been previously definitively decided in Pennsylvania." (N.T. 12/3/09, at 52.) Even if the plaintiffs had demonstrated that their alleged conflict existed, they do not dispute the fact that no controlling Pennsylvania case law exists which might provide this court with the guidance and authority required to grant them injunctive relief in a circumstance wherein there lies no justification or basis for a finding of the conflicting relationship which is alleged to exist.

Furthermore, the plaintiffs' reliance upon Pennsylvania Rule of Professional Conduct 1.7, in support of their claim to entitlement to their selection of independent counsel to defend Ms. Eckman, at Erie's expense, is misplaced. Pa.R.P.C. 1.7. Rule 1.7 provides, in relevant part:

"(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

"(2) there is a significant risk that the representation of *one or more clients* will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Pa. R.P.C. 1.7(b).

In this case, retained defense counsel has only one client and that is Ms. Eckman, and thus Rule 1.7 does not apply. Moreover, the plaintiffs failed to produce any evidence that counsel retained by Erie to defendant Ms. Eckman in the Mascaro litigation has, in any way, breached his or her ethical obligations under any of the Pennsylvania Rules of Professional Conduct which might otherwise apply to the representation complained of. In actuality, as in fact, despite the selection, hiring, and funding by the defendant insurer of counsel to represent its insured plaintiff, Erie retains no control over the appointed counsel's decisions making or judgments made regarding the defense of Colleen Eckman in the Mascara litigation; nor does there exist any evidence to the contrary. The trial court is unwilling to accept the notion asserted by the plaintiffs that any attorney selected by Erie will disregard the professional and ethical responsibilities which obligate him to represent only the interests of his client without qualification or reservation consistent with the time-honored tenets upon which there rests and relies the relationship between an attorney and his client. Having failed to demonstrate that either the law or the Rules of Professional Responsibility currently in effect in this Commonwealth support their contention that they are entitled to select counsel of their own choosing to represent Ms. Eckman in her defense of the underlying Mascaro litigation, at Erie's expense, the trial court properly denied the plaintiffs' motion for preliminary injunction.

## CONCLUSION

For all of the aforementioned reasons, the trial court believes that the order, dated January 20, 2010, denying the plaintiffs' motion for preliminary injunction should be affirmed.